# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** : | |
| : | **3:19-CR-298** |
| **v.** : | |
| : | **(JUDGE MANNION)** |
| **JASON RODRIGUEZ,** : | |
| **Defendant** : | |

# MEMORANDUM

## I. BACKGROUND

On August 3, 2020, defendant Jason Rodriguez, an inmate confined at the Lackawanna County Prison ("LCP") in Scranton, Pennsylvania, who is serving an 18-month federal sentence, (*see* May 15, 2020 Judgment, Doc. 56), filed, *pro se*, a "Motion Seeking Halfway House/House Arrest" due to the COVID-19 pandemic. (Doc. 64). Rodriguez states that this conviction was his first offense and that he has no detainers lodged against him. He also states that his release date is December 24, 2020. Rodriguez does not allege any underlying medical conditions which would make him more at risk from suffering severe complications if he contracts the virus. Rodriguez attached articles about the pandemic in prisons to his motion.

Although he is presently serving his sentence in LCP, the Judgment directed that Rodriguez was committed to the custody of the Federal Bureau

1

of Prisons ("BOP") for an 18-month prison term, and that he was remanded to the custody of the United States Marshal ("USM"). (Doc. 56). Rodriguez also states that he was informed by the USM that he has been designated to FCI Loretto to serve his sentence but to date he has not been advised when he will be transferred. Thus, Rodriguez has not yet been formally transferred to BOP custody.

On August 5, 2020, the court directed the government to respond to defendant's motion by August 17, 2020. (Doc. 65). The government timely filed its response, (Doc. 66), on August 12, 2020.

On August 21, 2020, Rodriguez filed his reply brief. (Doc. 67). In his reply brief, Rodriguez clearly indicates that his Motion is one for Compassionate Release under 18 U.S.C. §3582(c)(1)(A), and he requests his transfer from prison to home confinement, due to the COVID-19 pandemic. Rodriguez alleges that a guard in LCP tested positive for the virus on August 7, 2020, and that the guard was in close contact with nine inmates who were in the same unit with him. He states that the inmates were quarantined. Rodriguez also states that since his unit works in the kitchen, he is "highly exposed" to other inmates and is in danger to contracting the virus if it spreads in the prison.[1]

---

[1]The court takes judicial notice of "the policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison", as detailed by the court in United States v. Delacruz, 2020 WL 3475218, *2 (M.D. Pa. June 25, 2020). Also, Attachments 1 through 3 of the government's brief in ppposition to Rodriguez's prior motion seeking pre-sentence release

Rodriguez also acknowledged that under 18 U.S.C. §3582(c)(1)(A) he must first make a request for compassionate release to the BOP and then give it 30 days to respond. Rodriguez conceded that when he filed his motion he was "uneducated on the exhaustion [of] administrative remedies [requirement]", but indicated that he has recently submitted a request for compassionate release to the LCP Warden and to the Warden at FCI Loretto (his designated federal prison), as well as to the BOP Central Office. He indicated that he had not yet received a response to his requests but states that "[he] plan[s] on re-submitting [his] motion after the 30-day lapse of their response." (Doc. 67 at 1-2). Thus, Rodriguez admitted that he filed his instant motion before he submitted requests for compassionate release to the Wardens.

On September 3, 2020, Rodriguez filed a supplemental brief, (Doc. 68), with two Exhibits, indicating that he has now received responses to his requests from the LCP Warden and the Warden at FCI Loretto. Specifically, on August 20, 2020, the Warden at FCI Loretto sent Rodriguez a letter stating that he received Rodriguez's request for compassionate release and/or

---

from prison based on COVID-19, (Doc. 36), specified the safety protocols enacted at LCP to protect inmates and staff from the virus.

The court also notes that as of August 11, 2020, one staff member at LCP tested positive for COVID-19 but no inmates tested positive or had any symptoms of the virus and that the prison has taken precautions to prevent the spread of the virus. In its supplemental brief, (Doc. 70 at 9), the government states that "[a]t present, there are no inmate positive cases at LCP."

3

home confinement and that since Rodriguez was still in the custody of the USM, he was unable to consider his request. (Doc. 68 at 3). On August 11, 2020, the Warden at LCP sent Rodriguez a letter stating that he received Rodriguez's request for compassionate release and that LCP "does not have a compassionate release program." The Warden at LCP also stated that Rodriguez has exhausted his administrative remedies with respect to his confinement in LCP. (Doc. 68 at 4).

As such, Rodriguez states that he has now exhausted his administrative remedies and that 30 days has lapsed since he submitted his requests.

Thus, the court issued an Order on September 3, 2020, and directed the government to file a supplemental brief on or before September 18, 2020, addressing the exhaustion issue, and if exhaustion has been satisfied, the merits of Rodriguez's motion for compassionate release under 18 U.S.C. §3582(c)(1)(A). (Doc. 69). The court also allowed Rodriguez to file a reply brief to the government's supplemental brief.

The government filed its supplemental brief on September 9, 2020. (Doc. 70).

Rodriguez filed his reply brief to the government's supplemental brief on September 17, 2020. (Doc. 71). Rodriguez states that he did fully exhaust all of his administrative remedies since he submitted his requests to both Wardens "the same time [he] submitted [his instant] motion", i.e., August 3, 2020.

4

For the reasons set forth below, Rodriguez's motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), will be dismissed without prejudice for lack of jurisdiction due to his admitted failure to exhaust his prison administrative remedies under §3582(c)(1)(A)(i), since he filed his present motion at the same time he submitted his requests to the Wardens and before 30 days had lapsed after he submitted his requests.[2]

---

[2]In its initial brief, (Doc. 66 at 2), the government stated that "[t]o the extent, [], that the Court construes [defendant's] application as a motion for release to home confinement pursuant to the CARES Act, 18 U.S.C. §3624(c)(2), the motion is properly denied on the basis that the Court lacks the authority to grant the relief sought."

To the extent Rodriguez, who is proceeding *pro se*, is liberally construed as also seeking home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, (*see* Doc. 71), the court does not have authority to grant his request for relief and order the BOP to release him to home confinement. *See* United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). *See also* United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). Further, after a defendant is sentenced to imprisonment by the court, the BOP is solely responsible for determining the defendant's place of incarceration. *See* 18 U.S.C. §3621(b); 18 U.S.C. §3624(c). *See also* United States v. Delacruz, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so.").

5

## II.   DISCUSSION[3]

The court will first consider the exhaustion issue since "18 U.S.C. §3582 (c)(1)(A) contains a threshold exhaustion requirement." United States v. Schultz, —— F.Supp.3d ——, 2020 WL 1872352, at *3 (W.D. N.Y. April 15, 2020). *See also* United States v. Gadsden, 2020 WL 3871083, *1 (W.D. Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

Initially, the government stated that "[s]hould this Court also construe Defendant's motion as one for compassionate release under 18 U.S.C. §3582(c)(1)(A), the Court should ultimately go on to deny any such motion based upon the clear failure to exhaust administrative remedies." (Doc. 66).

In its supplemental brief, (Doc. 70 at 19), the government reiterates that Rodriguez's motion should be dismissed without prejudice since he did

---

[3]After Rodriguez pled guilty to Possession With Intent to Distribute Cocaine, Heroin & Fentanyl, 21 U.S.C. §841(a)(1), and Possession With Intent to Distribute Cocaine, Heroin, Fentanyl & Marijuana, 21 U.S.C. §841(a)(1), on May 15, 2020, the court imposed an 18-month concurrent prison sentence on him, followed by three years of supervised release. (Doc. 56).
Since the underlying facts of Rodriguez's arrest and drug trafficking conviction in this case are detailed in the government's supplemental brief, (Doc. 70 at 2-4), they are not repeated herein.
The court also notes that Rodriguez recently filed a motion for pre-trial release from LCP due to the COVID-19 pandemic, (Doc. 34), and it was denied by Judge Saporito on May 12, 2020. (Doc. 51).

not exhaust his administrative remedies when he filed his motion. The government states that "[t]his Court lacks authority to act on Defendant's motion for a sentence reduction at this time", and that "§3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court." Further, the government states, (Id. at 20), that:

> This requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court. As the Third Circuit recently confirmed, where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." United States v. Raia, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020); see also United States v. Harris, No. 20-1723 (3d Cir. July 20, 2020) (holding that an inmate may file a motion for compassionate release in Court 30 days after presenting the request to the warden, whether the administrative process is fully exhausted or not).

Thus, as the government points out, (Doc. 70 at 14), Rodriguez requested compassionate release from the Warden of FCI Loretto after, "not 30 or more days before", he filed his instant motion on August 3, 2020.

No doubt that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020) (citing United States v. Raia, 954 F.3d 594, 597

7

(3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)). "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, ⸺ F.Supp.3d ⸺, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

"Prior to petitioning a court for relief under §3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020). Thus, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**.'" United States v. Harris, 812 Fed.Appx. 106, 107 (3d Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A) (emphasis original). Further, "the [compassionate release] statute states that the defendant may file the

motion thirty days after the warden receives his request." *Id.* (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.")). *See also* United States v. Pitt, 2020 WL 2098272, *2 (M.D. Pa. May 1, 2020) ("One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue.") (citation omitted).

Although Rodriguez claims that he submitted requests for compassionate release to the Warden at LCP and to the BOP when he filed his motion, and that he has now received responses from them, he admitted that he did not wait 30 days to file his motion after he submitted his requests. Thus, Rodriguez has failed to meet his burden of establishing the procedural prerequisites for judicial review by showing that he has satisfied 30-day requirement contained in §3582(c)(1)(A).

Moreover, similar to an inmate who files a civil rights action must first exhaust his administrative remedies with the prison before filing his action in federal court, pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §1997e, and cannot complete the exhaustion process while his action is pending in the court, *see* Banks v. Roberts, 251 Fed.Appx. 774, 775-76 (3d Cir. 2007) (Third Circuit held that an inmate who filed his civil rights complaint in federal court before he completed the BOP administrative remedy appeal process failed to comply with PLRA mandatory exhaustion

9

requirement, and that "[a] prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies after initiating suit in federal court), the court finds that a defendant filing a motion for compassionate release under §3582(c)(1)(A) cannot wait out the 30-day period after he presents his request to the Warden while his motion is pending in the court. *See* Raia, *supra.* Rather, a defendant must wait 30 days after he submits his request to the Warden before he files his motion for compassionate release with the court.

As such, Rodriguez did not wait for 30 days after he submitted his requests to the Wardens before he filed his instant motion, which is statutorily required, and his motion is premature and will be dismissed without prejudice.

Secondly, the court cannot yet determine if Rodriguez has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's

failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* Feiling, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement).

### III. CONCLUSION

Defendant Rodriguez's Motion for Compassionate Release and for Release to Home Confinement related to the COVID-19 pandemic, (Doc. 64), will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction under

§3582(c)(1)(A)(i) since he filed his motion before 30 days had lapsed from the time he submitted his requests to the Wardens. Further, insofar as Rodriguez is seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

                                           s/ *Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States District Judge**

**Dated: October 13, 2020**
19-298-01